**Robert H. ZAWACKI, Appellant–Plaintiff,**

**v.**

**U.S.X., Appellee–Defendant.**

**No. 45A04–0011–CV–482.**

Court of Appeals of Indiana.

June 15, 2001.

Rehearing Denied September 18, 2001.

R. Cordell Funk, Funk & Foster, Hammond, Indiana, Attorney for Appellant.

Terence M. Austgen, Elizabeth M. Bezak, Singleton, Crist, Austgen & Sears, Munster, Indiana, Attorneys for Appellee.

## OPINION

ROBB, Judge

Robert H. Zawacki appeals from the trial court's grant of summary judgment in favor of U.S.X. Corporation ("USX") on his complaint for personal injury. We affirm.

*Issue*[1]

Zawacki raises a sole issue for our review, which we restate as follows: whether the trial court correctly determined that there were no issues of fact with respect to Zawacki's negligence claim against USX.

*Facts and Procedural History*

The parties stipulated to the following facts for purposes of summary judgment: Zawacki was employed by Edward Gray of Indiana, LLC ("Edward Gray")[2] as an ironworker. Edward Gray was an independent contractor hired by U.S. Steel Group, a unit of USX, to perform repair work on its property. The work consisted of stabilizing a girder that had come loose in a mixer pit. The girder was covered by a three-quarter inch thick plate of steel that was approximately twenty feet long by ten feet high. The plate was attached to the girder by more than 10 bolts, and was used as a heat shield. USX does not know whether it installed the heat shield or whether it was installed by an independent contractor; however, USX believes that the heat shield was installed at least five years prior to Edward Gray's involvement.

The method of stabilizing the girder was left to Edward Gray, and although the work was being done on USX's premises, the site was under the control of Edward Gray at the time the work was being done. On August 14, 1997, Zawacki used a cutting torch supplied by Edward Gray to remove a three foot section of the heat shield so the girder behind the plate could be examined. Two of the bolts which held the heat shield in place were "dummy bolts," that the head of the bolt was welded to the plate, but no actual bolt went through the shield and into the girder. A visual inspection of the shield before the work was commenced would not have revealed the presence of the dummy bolts.

Zawacki intended to remove a three foot square section of the shield so he could look behind it and determine how to stabilize the girder. He made a three foot vertical cut and a three foot horizontal cut in the upper corner of the shield with the cutting torch, relying on the dummy bolts to hold the shield in place until he could weld a lug onto the top of the shield and attach a rope to hold the shield in place while he removed the bolts. Because the bolts which Zawacki believed would hold the shield in place were in fact the dummy bolts, the three foot square section of the plate fell when he made the last cut, landing on his foot and causing an injury.

Zawacki filed a complaint against USX, alleging negligence causing him injury.

---

1. USX's motion for oral argument is hereby denied.

2. Edward Gray of Indiana is sometimes referred to in the parties' summary judgment materials as "Graycor."

USX ultimately moved for summary judgment, designating the affidavit of Kenneth Burns, a USX employee. Burns had reviewed the agreement which Edward Gray and USX had entered into regarding the work in question. Under the terms of the Edward Gray USX agreement, Edward Gray was responsible for the work site and the safety of its employees and representatives. Burns had which responsibility for the site of the work had been also inspected the heat shield and stated that USX had no actual knowledge that there were dummy bolts on the shield, that the bolts appeared to be complete bolts, and that the shield appeared to be structurally secure. Both parties designated portions of Zawacki's deposition describing the incident. The trial court granted USX's motion for summary judgment, stating that "[Zawacki] was an employee of an independent contractor; [Zawacki's] employer was in complete control of the job site and was responsible for job safety; there is no evidence to suggest [USX] had actual or constructive knowledge of the danger which would have been superior to [Zawacki's] knowledge; and the plate, left in its usual condition, was safe and structurally sound." R. 91. Zawacki now appeals from the trial court's decision.

### Discussion and Decision

### I. Summary Judgment Standard of Review

Our standard of review of a summary judgment order is well-settled: summary judgment is appropriate if the "designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). Relying on specifically designated evidence, the moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. *I/N Tek v. Hitachi Ltd.*, 734 N.E.2d 584, 586 (Ind. Ct.App.2000), *trans. denied.* If the moving party meets these two requirements, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue for trial. *Id.* A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Gilman v. Hohman*, 725 N.E.2d 425, 428 (Ind.Ct.App. 2000), *trans. denied.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Id.*

On appeal, we are bound by the same standard as the trial court, and we consider only those matters which were designated at the summary judgment stage. *Interstate Cold Storage v. General Motors Corp.*, 720 N.E.2d 727, 730 (Ind.Ct. App.1999), *trans. denied.* We do not reweigh the evidence, but we liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact for trial. *Estate of Hofgesang v. Hansford*, 714 N.E.2d 1213, 1216 (Ind.Ct.App.1999). The party that lost in the trial court has the burden to persuade the appellate court that the trial court erred. *Id.* Specific findings and conclusions by the trial court are not required, and although they offer valuable insight into the rationale for the judgment and facilitate our review, we are not limited to reviewing the trial court's reasons for granting or denying summary judgment. *Bernstein v. Glavin*, 725 N.E.2d 455, 458 (Ind.Ct.App.2000), *trans. denied.* A grant of summary judgment may be affirmed upon any theory supported by the designated materials. *Id.*

## II. Summary Judgment for USX

To sustain his action for negligence, Zawacki must establish: (1) a duty owed by USX to conform its conduct to a standard of care arising from its relationship with him; (2) a breach of that duty by USX; and (3) an injury to Zawacki proximately caused by the breach of that duty. *St. John Town Bd. v. Lambert*, 725 N.E.2d 507, 514 (Ind.Ct.App.2000). Whether USX breached a duty and whether the breach proximately caused injury to Zawacki are generally questions for the trier of fact. *Northern Indiana Public Serv. Co. v. Sharp*, 732 N.E.2d 848, 856 (Ind.Ct.App. 2000). However, the existence of a duty is a question of law for the court. *Id.* Generally, the owner of property is under no duty to provide an independent contractor with a safe place to work, but there is a duty to keep the property in a reasonably safe condition. *Ozinga Transp. Systems, Inc. v. Michigan Ash Sales, Inc.*, 676 N.E.2d 379, 384 (Ind.Ct.App.1997), *trans. denied.* This duty extends to employees of independent contractors, as well. *Bethlehem Steel Corp. v. Lohman*, 661 N.E.2d 554, 556 (Ind.Ct.App.1995). Also, landowners generally owe a duty to warn independent contractors of latent or concealed perils on the premises. *Ozinga*, 676 N.E.2d at 384. Moreover, a landowner is liable for reasonably foreseeable injuries to a contractor's employee caused by hazardous instrumentalities maintained by the landowner on the landowner's premises. *Id.*

Although USX argued before the trial court and on appeal that it had no duty to Zawacki, the case law cited is to the contrary. USX owed a duty to keep its property in a reasonably safe condition for Zawacki, a business invitee. Thus, summary judgment for USX would have been inappropriate on the issue of duty.

However, there remains a question of whether USX breached this duty.

Our supreme court has adopted the Restatement's definition of duty:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

restatement (second) of torts § 343. *See Burrell v. Meads*, 569 N.E.2d 637, 639–40 (Ind.1991). The Restatement also provides that:

[a] possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

Restatement (Second) of Torts § 343A. *See Ozinga*, 676 N.E.2d at 385 ("Section 343A of the Restatement ... should be read in conjunction with section 343....)." Thus, it is appropriate, when determining whether a landowner breached its duty to an invitee, to consider the comparative knowledge of the landowner and the invitee. *Bethlehem Steel*, 661 N.E.2d at 558.

The trial court stated that its decision was dictated by the Indiana Supreme Court decision in *Wingett v. Teledyne Indus., Inc.*, 479 N.E.2d 51 (Ind.1985). In that case, Wingett filed suit against Teledyne for injuries he suffered while removing ductwork in a foundry. The ductwork

had been installed in 1975 to collect dust and sand from the foundry machinery. The ductwork was approximately thirty inches in diameter and was made of one-half inch gauge steel. The segments of the ductwork were connected at each end by an iron collar through which bolts were inserted. The ductwork hung twenty-five to thirty feet above the floor and was supported by aluminum hangers attached to the ceiling at six to eight foot intervals. In 1980, Teledyne hired an independent contractor to remove the ductwork and install a new reclamation system. The independent contractor was in control of the work site during the demolition. Wingett, a journeyman ironworker, was hired by the independent contractor to be part of the demolition crew. Wingett's job was to proceed out onto a segment of the ductwork, wrap a cable around it, attach the cable to a crane which was supporting the ductwork, and cut the aluminum hangers with a torch. While sitting on a segment of ductwork, Wingett cut the second of two hangers supporting that segment, and Wingett and the ductwork fell to the floor. It was discovered that the fallen segment had been connected to the others by a one-eighth inch sheet metal band, sheet metal screws, and two clamps, rather than an iron collar and bolts. *Id.* at 53. Teledyne moved for summary judgment, which was granted by the trial court.

 On transfer, our supreme court affirmed the trial court's grant of summary judgment to Teledyne because Wingett failed to present evidence that Teledyne had superior knowledge of the allegedly dangerous condition of the ductwork. Teledyne did not specify the method of removal; no Teledyne employees were present while the work was being done; and the independent contractor had control of the site and direct supervision of Wingett. More-over, there was no evidence that Teledyne had inspected the ductwork to discover the nature of the connection, nor was there evidence that the ductwork was dangerous or unsafe when used for its intended purpose. Although *Wingett* held that the lack of superior knowledge meant Teledyne had no duty to Wingett, subsequent case law has clarified that "superior knowledge" should not be a consideration in determining whether the landowner owed a duty, but rather a consideration only in determining whether the landowner has breached that duty. *Douglass v. Irvin*, 549 N.E.2d 368, 370–71 (Ind.1990). The result in *Wingett* has been reaffirmed, as the evidence therein failed to show a breach of duty. *Id.* at 371.

 The undisputed evidence clearly establishes that the heat shield was structurally sound and posed no apparent risk of imminent personal injury to anyone in the condition in which it was installed. The shield had existed in the condition in which it was installed for at least five years without incident. It was only when Zawacki began dismantling the shield to access the loose girder that the shield became unsound. USX hired Edward Gray to stabilize a loose girder, and Edward Gray was in control of both the site and the activities of its employees at the time Zawacki was injured. USX did not specify the means and method by which the stabilization should be accomplished, and there is no evidence to suggest that USX knew Zawacki would be relying on the dummy bolts to hold the shield in place while he dismantled it to access the girder. Both parties have acknowledged that a visual inspection of the shield prior to the dismantling project would not have revealed the existence of the dummy bolts. Thus, USX's comparative knowledge was no

greater than that of Zawacki.[3] The undisputed evidence is insufficient to create any issues of fact with regard to USX's breach of duty.

### Conclusion

USX did not breach its duty as a landowner to Zawacki as the employee of an independent contractor hired to do work on USX's premises. The trial court correctly granted summary judgment for USX. The judgment is affirmed.

Affirmed.

BROOK, J., and VAIDIK, J., concur.

---

3. Zawacki would have us apply the "acceptance doctrine" to attribute constructive knowledge of the existence of the dummy bolts to USX. First, as USX correctly notes, the acceptance doctrine is applied to negate the liability of an independent contractor for work which has been accepted by the landowner. *See Blake v. Calumet Const. Corp.,* 674 N.E.2d 167, 170 (Ind.1996) ("In general, Indiana law has followed the rule that contractors do not owe a duty of care to third parties after the owner has accepted the work."). Additionally, were it the case that the heat shield as it had been installed had failed and caused Zawacki's injuries, USX's knowledge of the dummy bolts, constructive or otherwise, might be relevant. However, the facts of this case are that the heat shield was being altered when it failed and that it was the alteration that caused the failure. Thus, the acceptance doctrine is not applicable to this case.