Tina MESSER, Individually and as Special Administratrix of the Estate of Gregory S. Messer, Deceased, Appellant–Plaintiff,

v.

CERESTAR USA, INC. and Scheck Mechanical Corporation, Appellees–Defendants.

No. 45A04–0303–CV–140.

Court of Appeals of Indiana.

Feb. 27, 2004.

---

**5.** An HCL generator is a device that is used in the manufacturing of methamphetamine.

Kenneth J. Allen, Tracey S. Wetzstein, Michael T. Terwilliger, Kenneth J. Allen & Associates, P.C., Valparaiso, IN, Attorneys for Appellant.

Edward A. Sullivan III, Andrea G. Hoffman, D. Lucetta Pope, Baker & Daniels, South Bend, IN, Attorneys for Appellee Cerestar USA, Inc.

## OPINION

SULLIVAN, Judge.

Tina Messer ("Tina"), individually and as the special administratrix of the estate of her husband, Gregory Messer ("Greg"), appeals from the trial court's grant of summary judgment in favor of Cerestar USA, Inc. on her claim arising out of her husband's death.[1] In ruling upon the motion

---

1. Scheck Mechanical Corporation was also named as a defendant in this action. The chronological case summary indicates that

Scheck Mechanical Corporation was granted summary judgment prior to Cerestar being granted summary judgment. Tina does not

for summary judgment, the trial court concluded that Cerestar did not owe a duty to Greg under Indiana law, and even if it did, that the undisputed facts indicated that the duty was not breached. In this appeal Tina presents two main issues for our review, (1) whether the trial court incorrectly concluded that Cerestar did not owe a duty to Greg, and (2) whether the trial court incorrectly concluded that even if a duty existed that Cerestar did not breach that duty. · Cerestar also presents one issue for our review, whether the trial court erred in denying Cerestar's motion to strike the affidavit of Tina's expert, Dennis Puchalski.

We reverse the judgment in favor of Cerestar.[2]

Greg was an employee of Safway, a contractor hired by Cerestar to construct scaffolding at Cerestar's Hammond, Indiana production facility. On the morning of November 10, 1999, Greg and co-workers Adam Donaldson and Tim Deinema were advised by William Poparad, a Safway supervisor, as to the work that they needed to perform. They determined that they would access Building 53, where the scaffolding needed to be assembled, by raising the scaffolding materials through the fourth floor exterior doors of Building 123, which adjoined Building 53. Donaldson climbed onto the roof of Building 123 and attached a pulley to an I-beam which was above the doors. Dienema then used the pulley to hoist the materials up to the doorway, at which time Greg and Donaldson would pull the materials through the doorway, untie the rope, and move the

pieces to their intended location. As Dienema hoisted one load of materials to the doorway, a gust of wind caught the load and caused it to swing back and forth. In order to check on the condition of the load, Greg leaned over a safety gate which blocked the doorway. At that time, both Greg and the gate fell to the ground. Greg died of injuries caused by the fall.

Summary judgment is appropriate when the designated evidentiary matter reveals that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Hammock v. Red Gold, Inc.*, 784 N.E.2d 495, 498 (Ind.Ct.App.2003), *trans. denied.* The moving party bears the burden of making a prima facie showing that there are no genuine issues of material fact and that there is an entitlement to judgment as a matter of law. *Id.* If the moving party meets these requirements, the burden then shifts to the nonmovant to establish genuine issues of material fact for trial. *Id.*

In considering an appeal from the grant or denial of summary judgment, we are bound by the same standard as the trial court. *Id.* We consider only those facts which were designated to the trial court at the summary judgment stage. *Id.* We do not reweigh the evidence, but rather, liberally construe all designated evidentiary material in the light most favorable to the nonmoving party to determine whether there is a genuine issue of material fact. *Id.* Even if the facts are undisputed, summary judgment is inappropriate where the

---

challenge the grant of summary judgment in favor of Scheck Mechanical Corporation in this appeal.

**2.** We direct Appellant's counsel's attention to Indiana Appellate Rule 50(C). That rule requires that every appendix contain a table of contents which identifies each item contained in the appendix, including the item's date.

The failure to include the table of contents, such as occurred in this case, hinders our ability to review the appeal, especially when considering that the various reports and affidavits which comprise the evidence in this case were created from several different documents themselves.

record reveals an incorrect application of the law to the facts. *Id.* Because issues of contributory negligence, causation, and reasonable care are more appropriately left for determination by the trier of fact, summary judgment is rarely appropriate in negligence cases. *Id.*

 Tina maintains that Cerestar is liable for Greg's death under a theory of negligence. To recover under a theory of negligence, a party must establish: (1) a duty on the part of the defendant owed to the plaintiff; (2) a breach of that duty; and (3) an injury to the plaintiff proximately caused by the breach. *Id.* Generally, the existence of a legal duty owed by one party to another is a pure question of law. *Id.* In *Webb v. Jarvis,* 575 N.E.2d 992 (Ind.1991), our Supreme Court established a test to be utilized when determining whether a duty exists. However, the use of that balancing test was curbed by our Supreme Court's decision in *Northern Indiana Public Serv. Co. v. Sharp,* 790 N.E.2d 462 (Ind.2003). In that case, the Court noted that when the element of a duty has already been declared or otherwise articulated, there is no need to apply the test established in *Webb. Sharp,* 790 N.E.2d at 465.

 A review of the relevant case law reveals that the duty owed by the possessor of the premises to the employee of an independent contractor is well-settled. Generally, the owner of property is under no duty to provide an independent contractor with a safe place to work. *Zawacki v. U.S.X.,* 750 N.E.2d 410, 414 (Ind.Ct.App. 2001), *trans. denied.* However, the owner has a duty to maintain the property in a reasonably safe condition for business invitees, including employees of independent contractors. *Merrill v. Knauf Fiber Glass GmbH,* 771 N.E.2d 1258, 1264–65 (Ind.Ct. App.2002), *trans. denied; Zawacki,* 750 N.E.2d at 414. According to the Restate-

ment (Second) of Torts § 343 (1965), a possessor of land is subject to liability if: (1) the possessor knows or should know of a danger and should realize it involves an unreasonable risk; (2) should expect that invitees will not realize the danger or will not protect themselves against such; and (3) fails to exercise reasonable care to protect the invitees from danger. *Merrill,* 771 N.E.2d at 1265.

Based upon the above statements of the law, we conclude that the trial court erred in deciding that Cerestar did not owe a duty to Greg in relation to the activity which led to his fall. Furthermore, we conclude that the evidence designated at the summary judgment stage does not support the conclusion that Cerestar did not breach its duty of care toward Greg. Finally, we perceive of no ground which would support summary judgment in favor of Cerestar. *See id.* at 1264 (stating that summary judgment will be affirmed upon any legal basis supported by the designated evidence and that the trial court's findings of fact and conclusions of law are not binding upon this court).

The facts reveal that Safway was hired to erect scaffolding in one of Cerestar's buildings. Safway employees determined the manner by which they would bring the material into the work area. In so doing, they relied upon a safety gate which blocked the doorway to keep them from falling from the fourth floor of the building from which they worked. The gate was crafted of metal tubing and rested in U-shaped brackets which allowed the gate to be removed by lifting it upward and out of the brackets. The gate which fell as Greg leaned across it was constructed in this manner. According to the affidavit of Dr. John Trimble, the principal scientist for Exponent Failure Analysis Associates who performed analytical work on the construction and use of the gate after the accident,

there was no physical basis for concluding that the gate came out of its support brackets as Greg leaned against it. Nonetheless, his affidavit did not explain how the gate came out of the brackets causing Greg to fall. Deinema, who witnessed the fall, claimed in his deposition that the "gate slid out of the cups and down [Greg] came." Appellant's App. at 181. Viewing the evidence in the light most favorable to Tina, the non-movant, we conclude that there is a genuine issue of material fact in regard to how the gate came out of its support brackets and why Greg fell. Summary judgment is therefore not supported upon the ground that the gate did not fail.[3]

██ According to the view of duty·espoused by the Restatement (Second) of Torts § 343A, it is appropriate to consider the comparative knowledge of the landowner and the invitee when determining whether the landowner breached its duty of care toward the invitee. Zawacki, 750 N.E.2d at 414. Cerestar claims that Greg was in a position of superior knowledge as to the risks inherent in working at the height he was. Further, Cerestar claims that Greg had control of the gate and knowledge of the risks associated with its use. Finally, Cerestar claims that it could not foresee that Greg would leave the gate in place while he worked, ignore requirements that he wear a safety harness, use

the gate as his exclusive fall protection, and apply upward force to the gate while leaning against it.[4]

··To support its claims, Cerestar relies upon· this court's decisions in Merrill and Zawacki. In Merrill, an independent contractor was hired to make repairs to the roof of a warehouse owned by Knauf. The warehouse was equipped with fiberglass skylights which were not covered with any type of fall protection, such as wire mesh. Knauf warned· the independent contractor to be cautious around the skylights and noted that· an employee had previously fallen through one.. The independent contractor's employees were warned of the dangers of the skylights. Nonetheless, Merrill, an employee of the independent contractor, fell through a skylight when he became distracted by a co-worker as he ;walked across the roof.

This court, in review of the grant of summary judgment in favor of Knauf, determined that Knauf· was aware of the danger with the skylights, and to the extent that it believed that· the independent contractor's employees would not recognize that danger, it warned them of the risks involved. Merrill, 771 N.E.2d at 1265. · Consequently, this court determined that the only manner in which Knauf could be liable for Merrill's injuries was if Knauf should have ·anticipated that

---

3. In its brief, Cerestar claims that Deinema's testimony does not suggest that the gate failed. · However, a ́reasonable inference from Deinema's statement is that the gate did fail because in no way did Deinema suggest.that Greg did anything to remove the gate—which Cerestar notes must be lifted upward to be removed—as Deinema claims that all Greg did was lean against the gate, albeit that quite a bit of his body stretched over it.

4. In its memorandum supporting its motion for summary judgment, Cerestar intimated that the gate did not fail as it was not designed to be used as fall protection. Rather, Cerestar claims that the gate functioned as it

should have since it was designed to be removed when the doors were opened and being used. Whatever intentions Cerestar may have had for the use of the gate once the doors were opened, there can be no dispute that the presence of the gate was to prevent people from falling when the ́ doors were opened. While it may be that Cerestar only placed the gates there so that an unsuspecting individual would not open the door and plunge to the ground by walking off the edge, it seems incongruous to say that the gate was not meant to protect́ employees who were working there and using it as fall protection.

Merrill would fail to protect himself from the harm despite his knowledge and Knauf failed to exercise reasonable care to protect Merrill. *Id.* Applying the facts of the case to the law, this court noted that the independent contractor was in control of the manner in which the roof was to be repaired and the resources used in the project, including the activities of its employees. *Id.* Further, this court determined the Knauf could not have anticipated the circumstances which caused the employee to fall through the skylight. *Id.* at 1266. As a consequence, it was determined that Knauf could not be liable for Merrill's injuries and summary judgment in Knauf's favor was affirmed.

In *Zawacki,* an employee of an independent contractor was injured when a plate of steel with which he was working fell and landed on his foot. The employee had cut a three foot section of a heat shield loose from a girder on U.S.X. property. The employee thought that the plate was held in place by bolts, but in reality, the bolts were "dummy bolts," the head of a bolt was welded to the plate but no bolt went through the girder. This court noted that the site was under the control of the independent contractor at the time of the accident. Further, the agreement between U.S.X. and the independent contractor stated that the independent contractor was responsible for the work site and safety of its employees. Finally, no inspection of the steel plate before it was removed could have revealed that the bolts did not actually hold the steel plate in place.

In determining that the trial court correctly granted summary judgment in favor of U.S.X., this court relied upon the fact that U.S.X. did not have superior knowledge of the existence of the dummy bolts and did not know that the employee would rely upon the dummy bolts to hold the steel plate in place as he cut the shield loose. *Zawacki,* 750 N.E.2d at 415–16. In addition, this court noted that the independent contractor was in control of both the site and its employees and that U.S.X. did not specify the means and methods by which the employees of the independent contractor would perform their jobs. *Id.* at 415.

In this case, we agree with Cerestar's assertion that the designated evidence does support the conclusion that Cerestar did not tell Safway how to perform the job which it was hired to do. Nonetheless, that is the only important similarity between the facts before us and those present in *Merrill* and *Zawacki.* Here, the evidence does not indicate that anyone other than Cerestar was responsible for maintaining the gate. And while Cerestar has somewhat attempted to dissuade both the trial court and this court that the gate was not meant to be used as fall protection, that clearly was the purpose for which it was supplied. There were no signs which indicated that the gate could not be used for fall protection, and Cerestar has not demonstrated that Safway was informed that the gates had to be removed and that Safway employees had to use alternative means of fall protection.

Neither are we persuaded by the claim that Greg had superior knowledge of the risks associated with the use of the gate. It is true that Safway employees had worked with the gates before and that they had removed them while moving scaffolding material into buildings. However, there is nothing to indicate that the Safway employees believed that they could not rely upon the gates to provide adequate fall protection. In fact, Donaldson stated that there was no reason to tie-off since the gate, which was fall protection, was already there.

Finally, we are not persuaded by Cerestar's claims that it could not foresee that

Greg would not use additional fall protection and that he would rely solely upon the gate. While it appears that Safway had a policy which required that Greg tie-off and use his safety harness for fall protection, there is nothing to indicate that Cerestar relied upon this policy.[5] More importantly, Cerestar has not presented a compelling reason why it should not have expected that the gate would be used for fall protection. From the analysis performed on the gate, it seems clear that a properly functioning gate would have provided all the support that was necessary for Greg to perform his job safely. Only if the gate failed or if Greg lifted the gate out of its brackets could the accident have occurred.[6] Ultimately, this must be determined by the trier of fact, not this court.[7] As a consequence, summary judgment in favor of Cerestar was improperly granted.

 Because this case must be remanded for further proceedings, we must also address Cerestar's cross-appeal in which it asserted that the trial court erred in denying its motion to strike the affidavit of Dennis Puchalski, the expert witness presented by Tina.[8] In its challenge, Cerestar claims that Puchalski is unqualified to give his opinion as an expert and that his opinion was based upon assumptions and is unsupported by any facts. Decisions regarding the admissibility of expert testimony lie within the discretion of the trial court and will be reversed only for an abuse of discretion. *Armstrong v. Cerestar U.S.A., Inc.*, 775 N.E.2d 360, 365 (Ind.Ct.App.2002), *trans. denied.* An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before it, or the reasonable, probable, and actual inferences to be drawn therefrom. *Id.* The burden of establishing the foundation and reliability of the scientific principles and tests upon which the expert's testimony is based is with the proponent of the expert testimony. *Id.* at 365–66.

 Indiana Evidence Rule 702 requires that an expert be qualified by knowledge, skill, experience, training, or education. Furthermore, an expert must

---

5. It is noteworthy that a copy of the Cerestar Contractor Plant Rules which is included in appellant's appendix indicates that Cerestar required that contractors tie-off with a full-body harness when they were over six feet high and when working in unguarded, elevated areas. However, Steve Small, the Cerestar Director of Safety and Health, testified in a deposition on behalf of Cerestar that Cerestar did not require that individuals working behind a gate wear a safety harness and tie-off before Greg's accident.

6. Had the gate remained in place and not fallen together with Greg one might have concluded that the fall was occasioned by Greg having leaned too far over the gate. That, however, was not the evidence before us. Even if it were, a reasonable conclusion could be drawn that the gate provided was not high enough.

7. As stated before, there is a genuine issue of material fact in regard to how the gate came out of its brackets. Apparently based upon the research performed by Dr. Trimble, Cerestar claims that Greg applied upward force on the gate. While that fact may ultimately be determined to be so by the trier of fact, it is not conclusively proven by the designated evidence. If such fact is proven, such determination may be fatal to Tina's claim and deny her recovery for the death of her husband. However, a summary judgment proceeding will not be used to weigh the evidence and determine what happened in light of the eyewitness's statement that Greg only leaned against the gate and that it slipped out of the brackets which held it in place.

8. We would point out that we did not rely upon the Puchalski affidavit in reversing the trial court's decision to grant summary judgment. Rather, we focused upon the additional designated evidence which was available.

have sufficient skill in the particular area of expert testimony before the expert may offer opinions in that area. *Armstrong,* 775 N.E.2d at 366. Cerestar claims that because Puchalski is neither a scientist nor an engineer, and because his college degree is a Bachelor of Science in education, he is "manifestly unqualified to opine on the physics, mechanics, and/or ergonomics of how the force of [Greg]'s body affected Cerestar's gate." Appellee's Brief at 17.

■ Evidence Rule 702 does not require that an individual have received formal education in a certain field before that person may be considered an expert, and we will not read such requirement into the rule. Instead, Evidence Rule 702 acknowledges that one may acquire the requisite knowledge through means other than formal education. From the information available to this court, we see that Puchalski has spent fourteen years as a construction safety supervisor for the Illinois Toll Authority, worked four years as a consulting safety engineer, owned his own construction safety consulting business, and investigated jobsite accidents. This information is sufficient to permit the reasonable conclusion that Puchalski is an expert in worksite safety issues and accident investigation.

■ However, Cerestar presents a second concern related to the admission of Puchalski's affidavit. Specifically, Cerestar alleges that the affidavit does not satisfy the requirement that scientific testimony be admitted only if the court is satisfied that the scientific principles upon which the expert testimony rests are reliable as required by Evidence Rule 702(b). Before admitting expert testimony, trial courts must assess whether the reasoning or methodology underlying the testimony is scientifically valid and whether the reasoning or methodology properly can be applied to the facts in issue. *Armstrong,* 775 N.E.2d at 366. Scientific knowledge admitted under Evidence Rule 702 must be more than a subjective belief or unsupported speculation. *Id.*

Puchalski's ultimate conclusion was that the gate failed because it was unable to withstand two-hundred pounds of pressure and remain fixed in place. However, the affidavit did not reveal what scientific method or principles were used to arrive at the conclusion that the gate was defective. There was no indication that Puchalski took any measurements, performed any analysis, or even viewed the gate and accident scene. As a consequence, the opinion is unsupported speculation or subjective belief. Therefore, the admission of Puchalski's affidavit is against the logic and effect of the facts and circumstances before the trial court and the affidavit should not have been admitted into evidence.[9]

The judgment of the trial court is reversed. The cause is remanded for further proceedings not inconsistent with this opinion.

ROBB, J., concurs.

HOFFMAN, Sr.J., dissents with separate opinion.

HOFFMAN, Senior Judge, dissenting with separate opinion.

I concur with the majority's determination that Puchalski's affidavit should not

---

9. This result does not mean that Puchalski may not testify at trial. From the evidence which we have been presented, we have concluded that Puchalski is an expert in jobsite accident investigation. Therefore, assuming that he can satisfy the court that he relied upon scientific principles in arriving at his conclusions, his expert opinion could be admissible at trial.

have been admitted into evidence. I respectfully dissent, however, to the majority's reversal of the trial court's grant of summary judgment.

While I agree with the majority that Cerestar had a general duty to keep its property in a reasonably safe condition, I do not agree that there is a fact question pertaining to the breach of that duty. In order to defeat Cerestar's motion for summary judgment on the issue of breach of its duty, Tina was required to show that Cerestar had superior knowledge of the allegedly dangerous condition of the gate. *See Zawacki v. U.S.X.*, 750 N.E.2d 410, 414 (Ind.Ct.App.2001).

The designated evidence shows that Safway is regularly engaged in the erection of scaffolding and that Greg and his crew had control of the job site at the time Greg's fall occurred. The designated evidence also shows that Greg and his crew had worked with similar gates at Cerestar in the past, had removed the same type of gate from its brackets one floor below for a different job on the morning of the accident, and had visually inspected the gate before proceeding. Furthermore, the designated evidence shows that the gate met all applicable building codes, safety regulations, and safety guidelines, and that there was no scientific basis for concluding that the gate had failed. In short, the evidence fails to establish an issue of fact pertaining to whether (1) Greg's fall was caused by an unreasonably dangerous condition, or (2) Cerestar's knowledge of the allegedly dangerous condition of the gate was superior to the knowledge possessed by Greg and his crew.

I would affirm the trial court's grant of summary judgment for Cerestar.