**PSI ENERGY, INC., Appellant–Defendant,**

v.

**William Lee ROBERTS, Jr., and Beverly Roberts, Appellees–Plaintiffs.**

**No. 49A02–0210–CV–883.**

Court of Appeals of Indiana.

Jan. 28, 2004.

Transfer Granted May 21, 2004.

469

Robert K. Stanley, Kevin M. Toner, Ka-
thy L. Osborn, Meg A. Gallmeyer, Baker

& Daniels, Indianapolis, IN, Eric M. Cavanaugh, Plainfield, IN, Attorneys for Appellant.

Linda George, W. Russell Sipes, Laudig George Rutherford & Sipes, Indianapolis, IN, Attorneys for Appellees.

## OPINION

SHARPNACK, Judge.

In this case, PSI Energy, Inc. ("PSI") seeks to reverse the judgment against it in favor of William L. Roberts, Jr., and Beverly Roberts (collectively, the "Robertses"), which was rendered after a jury returned a verdict for the Robertses and against PSI.[1] PSI contends that the evidence is insufficient to support the verdict under either of the theories upon which the jury was instructed and brings the appeal from the trial court's denial of PSI's motions for judgment on the evidence and motion to correct error.

The essence of the theories upon which the case was tried is embodied in Final Instructions 18, 19, and 20. Final Instruction 18 reads:

> A landowner has a common law duty to exercise due care to keep its property in a reasonably safe condition for employees of independent contractors. The landowner in such case has an affirmative duty to exercise ordinary care to keep its property in a reasonably safe condition consistent with the purpose of the landowner's invitation to the independent contractor.
>
> In this case, a landowner would be liable for physical harm to Mr. Roberts, by a condition on its property, if Plaintiffs prove each of the following:
>
> (a) The landowner knew or by the exercise of reasonable care should have discovered the condition, and should have realized that it involved an unreasonable risk of harm to Mr. Roberts;
>
> (b) The landowner should have expected that Mr. Roberts would not discover or realize the danger, or would fail to protect himself against it;
>
> (c) The landowner failed to exercise reasonable care to protect Mr. Roberts against the danger; and
>
> (d) The Landowners' breach proximately caused Mr. Roberts' disease.

Appellant's Appendix at 199. In conjunction with Final Instruction 18, Final Instruction 19 provides that:

> In determining whether a Premises Defendant breached its duty to Mr. Roberts when he was present on the landowner's premises as an employee of an independent contractor it is appropriate to take into account the comparative knowledge of the Premises Defendant and Mr. Roberts. A Premises Defen-

---

1. Due to the voluminous record and complexity of this case, the parties participated in a pre-appeal conference with Judge Paul D. Mathias pursuant to Ind. Appellate Rule 19. As a result of the conference, the parties were ordered to submit their briefs on CD ROMS in either Microsoft Word or Corel Word Perfect format and in Adobe PDF format along with the regular hardcopy format. Additionally, the parties were ordered to submit the Appellant's Appendix and the transcript in Adobe PDF format along with the regular hardcopy format. Source citations in the briefs were also to be linked to Lexis/Nexis, Westlaw, the Appellant's Appendix, and the transcript on appeal. *See* Pre Appeal Conference Order dated February 28, 2003.

   We thank the parties and amici curiae, Indiana Manufacturing Association and O'Malia Food Markets, for their extra effort in preparing their electronic submissions. The electronic submissions, especially the linked source citations, greatly assisted in our review of this matter. We encourage other parties with voluminous records and complex cases to consider such electronic submissions with linked source citations in addition to the regular hardcopy submissions.

dant is not liable to Mr. Roberts for physical harm caused to him by any activity or condition on the land whose danger is known or obvious to him, unless the Premises Defendant should anticipate the harm despite such knowledge or obviousness.

*Id.* at 200.

Final Instruction 20 reads:

As a general rule, a landowner is not liable for the negligence of an independent contractor. A non-delegable duty may be imposed on the landowner, however, if one of the following two exceptions applies.

First, the law imposes a duty on a landowner if the work to be performed is intrinsically dangerous. Work is "intrinsically dangerous" if the danger exists in the doing of the activity regardless of the method used. The work is intrinsically dangerous if the risk of injury cannot be eliminated or significantly reduced by taking proper precautions.

Second, the law imposes a duty on a landowner if the work to be performed will probably cause injury to others unless due precautions are taken to avoid harm. The essence of this exception is the foreseeability of both the peculiar risk involved in the work and the need for special precautions. For purposes of this exception, the phase "peculiar risk" refers to the risk of a particularized harm specific to the work being performed or the conditions under which it is performed. Moreover, the exception applies only when the risk involved is something more than the routine and predictable hazards generally associated

with a given occupation: it must be a risk unique to the circumstances of a given job.

The plaintiffs have the burden of proof to establish that at least one of these two exceptions applies and that Mr. Roberts' disease was proximately caused by the breach of such duty.

*Id.* at 201.

PSI does not question the instructions as incorrect statements of the law, but, as we have noted, claims the evidence is insufficient to support giving any of the instructions or to support the jury's verdict. Our review brings us to the conclusion that there is sufficient evidence to support the jury's verdict and the judgment against PSI upon the law as stated in Final Instructions 18 and 19. We therefore affirm without considering the appeal as to the sufficiency of the evidence on the theory presented in Final Instruction 20.[2] *See, e.g., Picadilly, Inc. v. Colvin,* 519 N.E.2d 1217, 1220–1221 (Ind.1988) (holding that an appellant's challenge to the trial court's denial of a motion for judgment on the evidence failed because "a challenge to the sufficiency of the evidence must demonstrate inadequate evidence under every theory of liability, not merely one of many, before prejudice is established" and "[a] general verdict will be sustained if the evidence is sufficient to sustain any theory of liability").

*Relevant Facts*

This litigation arises from the diagnosis of William L. Roberts, Jr., ("Roberts") with peritoneal mesothelioma as a result of his exposure to asbestos during his employment as an insulator.[3] In 1958, Rob-

---

**2.** PSI also argues that a reversal of the judgment for Roberts requires a reversal of the judgment for Beverly Roberts. Because we affirm the judgment for Roberts, we need not address this issue.

**3.** According to the American Cancer Society, Mesothelioma is a rare form of cancer that affects the thin membranes lining the abdomen and chest. Mesothelioma is closely linked with asbestos; most cases of mesothelioma result from direct occupational as-

erts joined Local 18 of the Asbestos Union and was employed by Armstrong Contracting and Supply Company ("ACandS") as an insulator. ACandS was the nation's largest insulation contractor. Roberts was employed by ACandS from 1958 through 1986 and again from 1989 through 1991. Roberts retired in 1992, but continued to work part-time until 1997. During his employment, Roberts routinely worked with asbestos insulation. Roberts knew that he was working with asbestos insulation and, in fact, could recognize asbestos when he saw it because of his experience and training.

A link between asbestos exposure and mesothelioma was established as early as the 1940's and 1950's. Roberts received magazines from his asbestos workers' union beginning in 1958. Articles in the magazines urged the use of safety equipment, and "green sheets" included with the magazines from 1969 through 1976 discussed asbestos-related health problems. In the early 1960's, Indiana adopted a construction safety code and an exposure limitation of 5 million particles per cubic foot of air ("mppcf") for asbestos. In the early 1970's, with the promulgation of the Occupational Safety and Health Act of 1970, the Occupational Safety and Health Administration ("OSHA") adopted asbestos exposure limits. However, Roberts testified that, early in his career, ACandS "didn't furnish masks or anything, so we just covered our faces with handkerchiefs, if it was really bad, or we used our T-shirts." Transcript at 2720. "[I]n the '70s

sometime," ACandS started supplying masks for the employees. *Id.* at 2901–2902. However, Roberts testified that he did not learn the true dangers of asbestos until the 1980's. He noticed that asbestos products were being phased out, but no one told him it was for safety reasons. The evidence presented at trial indicated that ACandS was aware of asbestos-related health problems in the early 1960's.

During Roberts's employment as an insulator, he often worked at various generating stations owned by PSI, including the Dresser, Cayuga, Edwardsport, Noblesville, and Wabash River generating stations. In fact, Roberts testified that he "spent most of the '60s and '70s working in the powerhouse units." *Id.* at 2808–2809; *id.* at 2901 (Roberts noted that he spent "probably 70 or more percent" of his time in the 1960's and 1970's at the PSI generating stations). All five of the generating stations contained asbestos insulation.

In the late 1960's and into the 1970's, Roberts often worked at PSI's Dresser generating station. According to Roberts, the asbestos insulation at Dresser was in very poor condition, torn up, and "raggy." *Id.* at 2740. In addition to exposure to asbestos as a result of his own work at PSI, Roberts was also exposed to asbestos as a result of the work of PSI employees and other PSI contractors. For example, the boiler was often damaged, making it necessary for PSI employees to remove and dispose of asbestos insulation that was damaged. Numerous barrels of asbestos

bestos exposure.... Although scientists know that the risk of developing mesothelioma increases with the amount of asbestos exposure, there is no way to measure exactly the minimum amount of asbestos exposure that can lead to mesothelioma. American Cancer Society, Inc., *What is Asbestos?*, available at *http://cancer.org* (last visited January 13, 2004). Approximately

three-fourths of mesotheliomas start in the chest cavity and are known as pleural mesotheliomas. American Cancer Society, *What is Malignant Mesothelioma?*, available at *http://cancer.org* (last visited January 13, 2004). Another ten to twenty percent of mesotheliomas begin in the abdomen and are known as peritoneal mesotheliomas. *Id.*

insulation were removed, causing asbestos dust. Roberts and others worked nearby without protective clothing, masks, or respirators. No one from PSI told Roberts to protect himself or ACandS to protect its employees from the airborne asbestos dust that the PSI employees were generating from their own work. Roberts was also exposed to asbestos in 1973 when other PSI contractors were performing demolition work at the Dresser plant. The salvage crew allowed pipes covered in asbestos insulation to fall to the ground where the asbestos insulation "just literally exploded" and "flew off" of the pipes. *Id.* at 2748–2749.

While working at PSI's Cayuga generating plant in the late 1960's and early 1970's, Roberts was also exposed to asbestos as the result of the activities of PSI's own employees. Specifically, Roberts was exposed to airborne asbestos fibers when PSI employees drilled holes in asbestos pipe covering, PSI's traveling maintenance crew performed work at Cayuga, and PSI's maintenance people ground gaskets and otherwise caused asbestos materials to break apart while working over his head. Moreover, it was common at PSI to have asbestos insulation materials lying around on the floor until a PSI employee cleaned them up. While the insulation was lying on the floor, it was broken up and spread to lower floors through the vast areas of grating, which acted like a "cheese grater." *Id.* at 2783–2784. This type of exposure occurred "quite frequently" when Roberts was working at PSI's Cayuga plant. *Id.* at 2784–2785.

PSI's corporate representative, Hank Hammond, testified that he frequently saw ACandS's insulators performing work at the PSI plants in the 1960's and 1970's. He never saw the ACandS employees taking any precautions to protect themselves from breathing the asbestos insulation dust. Hammond recalled occasions where senior members of PSI's management were present while contractors from ACandS did insulation work.

Roberts was diagnosed with peritoneal mesothelioma in July 2001. The Robertses filed their complaint against PSI and sixty other defendants in 2001, naming PSI as a "premises defendant" that "failed to take the reasonable and necessary precautions to protect the health and safety of individuals such as [Roberts], thus contributing to [Roberts's] asbestos exposure." Appellant's Appendix at 221–222. A ten-week jury trial was held on the Robertses' claims against PSI and thirty-three other defendants. The Robertses argued that PSI was liable based upon a premises liability theory and based upon two exceptions to the general rule that PSI would not be vicariously liable for the negligence of ACandS, its independent contractor. The trial court denied PSI's motions for judgment on the evidence at the close of the Robertses' case and again at the close of all evidence. PSI argued, in part, that it was not liable under Section 343 or 343A of the Restatement (Second) of Torts because it had the right to expect that ACandS, as an experienced asbestos insulating company, would protect its workers.

The jury returned a verdict finding compensatory damages of $2,800,000.00 to Roberts and $1,000,000.00 to Beverly Roberts. However, the jury found for PSI and against the Robertses on their claim for punitive damages. The jury allocated thirteen percent fault to PSI, twelve percent fault to Roberts, thirty-six percent fault to nonparty ACandS, and the remaining fault to other nonparties. The trial court entered judgment against PSI awarding $364,000.00 to Roberts and $130,000 to Beverly Roberts for a total of $494,000.00. PSI filed a motion to correct error, which the trial court denied.

### Analysis

PSI challenges the denial of its motions for judgment on the evidence under Ind. Trial Rule 50 [4] and its motion to correct error under Ind. Trial Rule 59.[5] Our supreme court has held that although the language differs in these two rules, "both rules mandate that the motion be granted when there is insufficient evidence under the law to support a verdict." *Huff v. Travelers Indem. Co.*, 266 Ind. 414, 421, 363 N.E.2d 985, 990 (1977). When the trial court is considering a motion for judgment on the evidence subsequent to the jury's verdict, it must view only the evidence favorable to the nonmoving party and the reasonable inferences to be drawn from that evidence. *Id.* The trial court may enter judgment "only if there is no substantial evidence or reasonable inference to be adduced therefrom to support an essential element of the claim, i.e., the evidence must point unerringly to a conclusion not reached by the jury." *Id.* "This is the same standard which applies to a motion for judgment made at the conclusion of the evidence, i.e., there must be a complete failure of proof." *Id.*

If there is relevant evidence which supports the verdict, then the motion may not properly be granted because evidence which supports the verdict is sufficient evidence, and the final determination is left to the fact finder. This is not the scintilla rule. A scintilla is by definition barely perceptible and would

4. Ind. Trial Rule 50(A) provides that:

   Where all or some of the issues in a case tried before a jury or an advisory jury are not supported by sufficient evidence or a verdict thereon is clearly erroneous as contrary to the evidence because the evidence is insufficient to support it, the court shall withdraw such issues from the jury and enter judgment thereon or shall enter judgment thereon notwithstanding a verdict. A party may move for such judgment on the evidence.
   (1) after another party carrying the burden of proof or of going forward with the evidence upon any one or more issues has completed presentation of his evidence thereon; or
   (2) after all the parties have completed presentation of the evidence upon any one or more issues; or
   (3) after all the evidence in the case has been presented and before judgment; or
   (4) in a motion to correct errors; or
   (5) may raise the issue upon appeal for the first time in criminal appeals but not in civil cases; or
   (6) The trial court upon its own motion may enter such a judgment on the evidence at any time before final judgment, or before the filing of a notice of appeal, or, if a Motion to Correct Error is made, at any time before entering its order or ruling thereon. A party who moves for judgment on the evidence at the close of

   the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a judgment on the evidence which is not granted or which is granted only as to a part of the issues is not a waiver of trial by jury even though all parties to the action have moved for judgment on the evidence. A motion for judgment on the evidence made at one stage of the proceedings is not a waiver of the right of the court or of any party to make such motion on the same or different issues or reasons at a later stage as permitted above, except that error of the court in denying the motion shall be deemed corrected by evidence thereafter offered or admitted.

5. Ind. Trial Rule 59(J)(7) provides that:

   In reviewing the evidence, the court shall grant a new trial if it determines that the verdict of a non-advisory jury is against the weight of the evidence; and shall enter judgment, subject to the provisions herein, if the court determines that the verdict of a non-advisory jury is clearly erroneous as contrary to or not supported by the evidence, or if the court determines that the findings and judgment upon issues tried without a jury or with an advisory jury are against the weight of the evidence.

not support a reasonable inference. Judicial economy is served by this view in that the trial court withdraws the case from the jury or enters a judgment notwithstanding the verdict whenever an appellate court would be compelled to find the evidence does not support a judgment. The trial court may not weigh the evidence when considering whether to enter judgment contrary to the verdict.

*Id.* at 421–422, 363 N.E.2d at 990–991 (internal citations omitted). As our supreme court recently noted, if there is evidence that would allow reasonable people to differ as to the result, judgment on the evidence is improper. *Smith v. Baxter,* 796 N.E.2d 242, 243 (Ind.2003).

Roberts's premises liability theory was based upon evidence that, in addition to the work ACandS and Roberts performed with and upon asbestos containing materials, PSI's employees engaged in conduct that caused asbestos to become airborne in areas that Roberts was working, adding to the asbestos exposure Roberts encountered through his own work. Specifically, Roberts spent most of the 1960's and 1970's working in PSI's generating stations. While Roberts worked in the plants, PSI employees often removed and disposed of asbestos insulation and caused asbestos dust in the areas where Roberts worked. Asbestos insulation materials were commonly found lying around on the floor in the PSI plants. While the insulation was lying on the floor, it was broken up and spread to lower floors through the vast areas of grating, which acted like a "cheese grater," and resulted in more asbestos exposure to Roberts. Transcript at 2783–2784.

■ Although, generally, a landowner has "no duty to furnish the employees of an independent contractor a safe place to work in the broad sense as the phrase is applied to an employer," the landowner is under a duty to keep the property in a reasonably safe condition for business invitees, including employees of independent contractors. *Merrill v. Knauf Fiber Glass GmbH,* 771 N.E.2d 1258, 1264–1265 (Ind. Ct.App.2002), *trans. denied; see Burrell v. Meads,* 569 N.E.2d 637, 639 (Ind.1991) ("A landowner owes the highest duty to an invitee: a duty to exercise reasonable care for his protection while he is on the landowner's premises."), *reh'g denied; see also Zawacki v. U.S.X.,* 750 N.E.2d 410, 414 (Ind.Ct.App.2001) (A "landowner is liable for reasonably foreseeable injuries to a contractor's employee caused by hazardous instrumentalities maintained by the landowner on the landowner's premises"), *trans. denied.*

■ Our supreme court has held that the best definition of this duty comes from the Restatement (Second) of Torts § 343 (1965):

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) *should expect that they will not discover or realize the danger, or will fail to protect themselves against it,* and

(c) fails to exercise reasonable care to protect them against the danger.

*Id.* at 639–640 (emphasis added). Section 343 must be read together with Section 343A of the Restatement (Second) of Torts, which provides that:

A possessor of land is not liable to his invitees for physical harm caused to them by an activity or condition on the

land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness.

*Douglass v. Irvin,* 549 N.E.2d 368, 370 (Ind.1990). In analyzing whether a landowner breached its duty to an invitee, we consider the purpose and intent of the invitation and the comparative knowledge of the parties.[6] *Merrill,* 771 N.E.2d at 1265.

PSI focuses its argument upon Section 343(b) above. PSI does not contest the trial court's denial of the motion for judgment on the evidence based upon its lack of knowledge of the danger of asbestos or its failure to exercise reasonable care to protect Roberts. Rather, PSI contends that the trial court should have granted its motion for judgment on the evidence because there was no evidence that PSI should have expected that Roberts would not discover or realize the danger, or would fail to protect himself against it. PSI argues that it had the right to expect that ACandS's "professional asbestos workers would be cognizant of the hazards of asbestos exposure they routinely encountered on a daily basis in the course of their occupation, and that they would take whatever precautions they deemed appropriate to protect themselves." Appellant's Brief at 60. PSI points out that Roberts was an experienced, professional asbestos worker who recognized asbestos when he saw it. PSI contends that it "rightfully expected" that ACandS would warn its employees of the hazards of asbestos and Roberts would be familiar with such hazards. Further, PSI argues that there is no evidence that PSI had superior knowledge to ACandS of the dangers of asbestos.

In response, Roberts argues that PSI had actual knowledge that Roberts and the other insulators were not protecting themselves. Further, Roberts contends that ACandS's knowledge regarding the danger of asbestos cannot be imputed to Roberts. Moreover, even if ACandS's knowledge could be imputed, Roberts argues that "PSI would still be liable if the evidence supports an inference that PSI could have and should have anticipated that the dangerous condition (air contaminated with airborne asbestos fibers) would cause physical harm to Roberts notwithstanding its known or obvious danger." Appellee's Brief at 34.

## A. Analysis under Section 343(b) of the Restatement (Second) of Torts.

■ As noted above, a condition of liability under Section 343(b) of the Restatement (Second) of Torts is that the landowner "should expect that [the invitees] will not discover or realize the danger, *or* will fail to protect themselves against it." (emphasis added). Thus, a condition of liability is that PSI "should [have] expect[ed] that [Roberts] [would] not discover or realize the danger" *or* "should [have] expect[ed] that [Roberts] ... [would] fail to protect [himself] against it." Roberts argues that the trial court properly denied the motion for judgment on the evidence

---

6. Additionally, we note that after the parties filed their briefs in this case, our supreme court held that "[t]he comparative knowledge of a possessor of land and an invitee regarding known or obvious dangers may properly be taken into consideration in determining whether the possessor breached the duty of reasonable care under Sections 343 and 343A of the Restatement (Second) of Torts."

*Smith,* 796 N.E.2d at 245. Further, our supreme court rejected an argument that "to impose liability upon a possessor of land under Section 343 and 343A requires that an invitee's conduct notwithstanding the known or obvious risk must be undertaken for a 'type of strong, external compelling circumstance.'" *Id.* (internal quotations and citations omitted).

because PSI had actual knowledge that Roberts was failing to protect himself from the dangers of the asbestos. PSI's corporate representative, Hank Hammond, testified that he frequently saw ACandS's insulators performing work at the PSI plants in the 1960's and 1970's. He never saw the ACandS employees taking any precautions to protect themselves from breathing the asbestos insulation. Hammond also recalled occasions where senior members of PSI's management were present while contractors from ACandS did insulation work. Consequently, the jury was presented with sufficient evidence to demonstrate that PSI should have expected that Roberts would fail to protect himself against the dangers. Because PSI does not contest the trial court's denial of the motion for judgment on the evidence based upon Section 343(a) or 343(c) of the Restatement, sufficient evidence was presented to establish liability under Section 343.

### B. Analysis under Section 343A of the Restatement (Second) of Torts.

■ Because we must read Section 343 together with Section 343A, we will also address PSI's contention that it had the right to expect that Roberts, as a professional asbestos worker, would realize the danger of PSI's asbestos work. As noted above, Section 343A provides that: "A possessor of land is not liable to his invitees for physical harm caused to them by an activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." Comment b to Section 343A provides that:

> [t]he word "known" denotes not only knowledge of the existence of the condition or activity itself, but also appreciation of the danger it involves. Thus the condition or activity must not only be

known to exist, but it must also be recognized that it is dangerous, and the probability and gravity of the threatened harm must be appreciated. "Obvious" means that both the condition and the risk are apparent to and would be recognized by a reasonable man, in the position of the visitor, exercising ordinary perception, intelligence, and judgment.

We conclude that there was sufficient evidence for the jury to conclude that: (1) the danger was not known or obvious to Roberts; and (2) PSI should have anticipated the harm.

In arguing that it had the right to expect that ACandS would warn its employees of the hazards of asbestos and Roberts would realize the danger, PSI relies, in part, upon our holdings in *Watson v. Ziegert*, 616 N.E.2d 785 (Ind.Ct.App.1993), and *Merrill*, 771 N.E.2d at 1264–66. In *Watson*, the contractor, Watson, went to Ziegert's home to dismantle a television tower that was forty feet tall. *Id.* at 785. Watson noticed that the tower was old and rusted. *Id.* at 786. While Watson was dismantling the tower, the tower fell onto a neighbor's roof, causing Watson to sustain serious injuries. *Id.* Watson and Ziegert disagreed as to whether Ziegert told Watson that the tower was old and rusted. *Id.*

In reviewing the trial court's grant of summary judgment to Ziegert, we analyzed the situation under Sections 343 and 343A of the Restatement (Second) of Torts. *Id.* 787. We held that Ziegert did not need to warn Watson because Ziegert "couldn't tell Watson anything he did not know." *Id.* at 787. Watson was invited onto Ziegert's property for the purpose of dismantling the tower. *Id.* The age and rust were "easily observable" and, thus, were conditions that Ziegert rightfully expected would be noticed by Watson. *Id.* at

788. Furthermore, we also held that "Ziegert rightfully expected Watson, an experienced person at dismantling towers, would take the proper precautions to guard against any additional hazards resulting from the easily observable conditions." *Id.*

*Watson* is distinguishable from this case because the danger in *Watson,* i.e., the tower's age and rust, was easily observable. Here, although the asbestos was easily observable, the danger was not so obvious. The jury was presented with conflicting evidence as to whether Roberts, as an experienced insulator, would have been aware of the dangers. Although evidence was presented indicating that Roberts received union newsletters in the 1960's and 1970's describing the dangers of asbestos, Roberts testified that he was not aware of the dangers of asbestos until the 1980's. The jury also heard conflicting evidence as to PSI's knowledge of the dangers of asbestos. PSI does not argue that Roberts's knowledge of the dangers of asbestos was superior to PSI's knowledge. Because the jury heard conflicting evidence as to Roberts's and PSI's comparative knowledge of the dangers of asbestos, it was for the jury to interpret the conflicting evidence. *Cf. Ozinga Transp. Sys., Inc. v. Michigan Ash Sales, Inc.,* 676 N.E.2d 379, 386 (Ind.Ct. App.1997) (holding that "NIPSCO's comparative knowledge was no greater than that of Schroeder and NIPSCO could not have informed Schroeder of any facts of which he was not already aware"), *reh'g denied, trans. denied.*

In *Merrill,* the landowner, Knauf, discovered that the roofs on its warehouses needed repairs. *Id.* at 1261. Knauf hired Ellerman Roofing to perform the repairs. *Id.* at 1261–1262. Knauf repeatedly warned Ellerman Roofing's owner and employees that the roofs had skylights and a Knauf employee had fallen through a sky-

light years earlier. *Id.* at 1262. During the repairs, Merrill, an employee of Ellerman Roofing, was distracted by a coworker, stepped onto a skylight, and fell through it. *Id.*

In reviewing the trial court's grant of summary judgment to Knauf, we discussed Merrill's premises liability theory. *Id.* at 1264–1265. Merrill argued that Knauf was liable because it was under a duty to keep the property in a reasonably safe condition for business invitees, including the employees of independent contractors. *Id.* at 1265. We noted that Knauf had repeatedly warned Ellerman Roofing of the skylight's dangers and "[t]he warnings to Merrill's superiors were warnings to Merrill, 'the employment relation permitting a reasonable assumption that such notice will be communicated in the ordinary course to all employees on the work.' " *Id.* (quoting *Howard,* 509 N.E.2d at 205). Furthermore, Merrill admitted that he knew that the skylights were dangerous. *Id.* Thus, under Sections 343 and 343A of the Restatement, "Knauf could be liable for Merrill's injuries only if Knauf should have anticipated that Merrill would fail to protect himself despite his knowledge and if, despite such, Knauf failed to exercise reasonable care to protect Merrill." *Id.* In determining this issue, we consider the "purpose and intent of the invitation ... and the comparative knowledge of the parties." *Id.* We held that Knauf was not liable to Merrill, because under the circumstances, Knauf could not have anticipated such events given the circumstances surrounding the invitation and the comparable knowledge of the parties. *Id.* at 1266.

We find *Merrill* distinguishable from the current matter for a number of reasons. First, Knauf repeatedly warned the roofing company's owner that the skylights were dangerous. Here, PSI did not warn

ACandS or its employees that the asbestos dust that PSI's employees were generating was dangerous. Additionally, and most importantly, Knauf had no notice that Merrill or other roofing company employees were walking on skylights and not taking precautions to protect themselves. Here, over the period that Roberts and others were working on the premises, PSI had actual notice and knowledge that the asbestos workers were not taking precautions to protect themselves.

PSI cannot continue to rely on what might have been a reasonable expectation at the outset where activities inconsistent with that expectation continued for a number of years. As noted above, PSI's corporate representative, Hank Hammond, testified that he frequently saw ACandS's insulators performing work at the PSI plants in the 1960's and 1970's. He never saw the ACandS employees taking any precautions to protect themselves from breathing the asbestos insulation. Hammond also recalled occasions where senior members of PSI's management were present while contractors from ACandS did insulation work. Had Knauf known that Merrill and others were walking on the skylights, Knauf would not have been protected from liability by the expectation that they would not do so. Consequently, the jury was presented with sufficient evidence to determine under Section 343A that PSI should have anticipated the harm. Thus, PSI's arguments regarding Section 343A fail for two reasons: (1) there was sufficient evidence for the jury to find that the danger was not known or obvious to Roberts; and (2) there was sufficient evidence for the jury to find that PSI should have anticipated the harm.

In summary, this case emphasizes the importance of our standard of review. As noted above, "[i]f there is relevant evidence which supports the verdict, then the motion may not properly be granted because evidence which supports the verdict is sufficient evidence, and the final determination is left to the fact finder." *Huff*, at 421–422, 363 N.E.2d at 990. As our supreme court recently noted in *Smith:*

> Because we must look only to the evidence and the reasonable inferences most favorable to the plaintiff as a nonmoving party, and because the motion for judgment on the evidence is proper only where there is no substantial evidence supporting an essential issue in the case, we decline to reverse the trial court. The interpretation of the evidence, with the necessary assessments of weight and credibility, was properly left to the sound judgment of the jury.

*Smith,* 796 N.E.2d at 246. When the evidence is interpreted in a light most favorable to Robertses, it is clear that there was evidence supporting the essential elements of the Robertses' premises liability theory. Thus, the trial court did not err by denying PSI's motions for judgment on the evidence or motion to correct error on the Robertses' premises liability theory. *See, e.g., id.* (holding that the trial court did not err by denying a motion for judgment on the evidence).

For the foregoing reasons, we affirm the trial court's denial of the motions for judgment on the evidence and motion to correct error.

Affirmed.

BAKER, J. and BROOK, C.J., concur.